Call the next case. 318-0677, J. Cigarri Holdings, Acme, v. Timothy Cassidy v. GLK Land Trust, and their account appellants, by a plaintiff, Van Regen. Mr. Van Regen, you may approach before we proceed. As everyone has noticed, Justice Slytton is not in his chair. He's an adept in his family and is not able to be with us today. But he will be participating in the decision fully. He will listen honestly to the tapes and confirm with Justice Slytton and myself. He will be a full participant in the decision. With that, you may proceed. Good afternoon, Your Honors. May it please the Court. Again, my name is James Van Regen of Quinn, Johnson, Henderson, Vittorius, and Cerullo. And I represent GLK Land Trust and Gary L. Kempf, defendant appellants in this matter. Just as a lay of the land, the parties in this case own adjoining properties which share a common wall between the buildings. J. C. R. E., the plaintiff, owns 4612 North Prospect, and GLK owns 4610 North Prospect. Past owners of these two properties had come together and spoken sometime in the mid-90s to discuss an issue that the owner of the building GLK now owns had with the roof leaking on his building. What they came to was an agreement that the owner of GLK's building could then build a knee wall on the party wall between the two buildings which would allow a tin roof then to come over the knee wall and actually encroach a bit upon the other building's portion of the common wall as well as the gutter would encroach upon the remaining top of the building of the owner of the J. C. R. E. building. At that time, this was thoroughly discussed. The two came to an agreement. It was understood between the past owners that this would be a permanent fix. It's not something that you would do just for a temporary fix as it was expensive. The roof was installed, and it still is installed today. Now, GLK in 2001 then purchased the 4610 building, the building that had the roof actually upon it, and the roof was encroaching on the building next door. At that time, the roof was existing as it does today, and it was part of the eventual purchase price by GLK of this building was that it included this roof. The deed also included language that GLK was taking the property essentially as is, subject to any covenants, easements, or conditions upon the property. In 2002, J. C. R. E. purchased the next door property, the 4612 North Prospect property. At that time, again, this relevant roof was still in place just as it is today, and just as was agreed by the prior owners. J. D. Comfort of J. C. R. E. has testified that at the time of this purchase, he would have gotten up onto the roof of the building that he purchased to look around. And pursuant to the 2002 deed, which gave title of this property to J. C. R. E., again, the property was taken subject to covenants, conditions, restrictions, and easements apparent or of record at the time that that deed was given. Again, the roof was present and observable at the time of that transfer of the deed. After 12 years of owning these two buildings and taking no issue, eventually the owners of J. C. R. E. now claim that it's an encroachment or a trespass upon their property. The reason for this being that J. C. R. E. now wants to build up upon their property and put an apartment above it. Prior to this lawsuit coming along, the two parties actually did discuss this, and my client was perhaps on board with doing the same to his building. However, through examination, they found that it was going to be very costly to do so as the party wall actually would require a significant amount of work of shoring up to allow it to be built on top of. This was going to come at a cost of about $49,000 to shore up the party wall as well as just over $12,000 to remove and replace the roof on my client's building. At that point, my client bowed out and decided that it was too rich for his blood, and this suit came about. When the suit came about, eventually in the spring of 2017, there were cross motions for summary judgment which were filed. GLK, my client, arguing that pursuant to the 2002 deed, the J. C. R. E. took their property pursuant to the roof. They accepted the roof at the time of the purchase, as well as arguing that injunctive relief, which is what was asked for by the plaintiff, was not appropriate in this case. J. C. R. E. argued in their motion for summary judgment that the past owner's agreement was a revocable license, and now they're revoking it. So at that point, summary judgment, they would have argued, should have been entered for them. Both motions were denied. Upon cross motions for reconsideration, and despite no new information, the trial court did at that point grant J. C. R. E.'s motion for reconsideration and grant summary judgment in their favor, alleging or essentially ruling that the past agreement by past owners was a revocable license, which is now being revoked. So the issues here before the court and your honors today are whether the trial court erred in granting the motion to reconsider based upon its finding that there was a revocable license, and whether the trial court erred in denying GLK's motion for summary judgment and somewhat ignoring, rather, the arguments relating to injunctive relief and the appropriateness of that. So moving into arguments, your honor, first, plaintiff's summary judgment should have been denied and defendants granted as they accepted the condition, which was the roof, pursuant to the 2002 deed. That deed gave title to J. C. R. E., plaintiff, subject to covenants, conditions, restrictions, reservations, and easements apparent and of record. This would include the roof. There's no dispute that it was observable at that time and it existed as an encroachment over onto the J. C. R. E. property at that time. The trial court did not appropriately take this language in the deed into consideration, and both the trial court and the plaintiff have kind of ignored it. But this would be a disservice to the legal meaning of that document. If unambiguous, the terms in an agreement must be given their common meaning, and a contract and the terms they're in must be said to mean something. Those terms were not placed in the deed for no reason, and the reason was to keep the status quo. The roof existed at that point, and that's what the plaintiff was purchasing in 2002, and that's the condition that the defendant purchased the property in in 2001. So when this language is taken into consideration and applied to the facts here, the roof was a condition or an easement apparent or not of record, but an easement apparent at that time, which means that when the plaintiff accepted that deed, they accepted the condition upon the property. So at this point, they had no leg to stand on as they accepted that condition. As far as the roof being on the property at that time, regardless of whether or not there was a license or some easement created prior to that, when they agreed to that deed, they agreed to the roof being in place. Now moving on to whether or not injunctive relief is appropriate. The trial court failed to address this at the original motions in the trial court. There's an appropriate standard that should be applied in cases like this, and that standard is that where an encroachment is slight and unintentional and the cost of removing it would be great and the corresponding benefit to the adjoining property is small and damages can be had, then the courts will ordinarily not grant injunctive relief in situations like this. Well, in this case, the encroachment is not intentional, and there was a case law cited in our brief to support that, as it was done with permission. And the cases there are the Whitlock and Gin Ann Realty Co. cases. So here there was permission granted by the past owner in order to install the roof, so this is an unintentional encroachment. The roof remained for some 20 years without issue, 12 of which the plaintiff owned that property, and there was no intentional encroachment during that time. The cost of modifying the roof is great. It would be just over $12,000. And also the defendant bought this property with the roof as it was, and if he's forced to change it, he did not really get the benefit of his bargain during that time, which is an additional cost to be aware of. Further, the damage to plaintiff is interestingly extremely light, and that is because at this point there's no evidence the roof is doing any damage to plaintiff's property. What plaintiff really wants is to build up on their property. Well, the problem is they cannot do that without defendant's permission at this point to use the common party wall and to shore up the common party wall in order to be able to build up. The defendant has expressed that he is not willing to grant this permission. So at this point, the damages to defendant would be great, and the benefit to plaintiff would be slight. Further, plaintiff did have a claim at law. However, they allowed that claim to be barred by the running of the statute of limitations. Now, for that reason, we believe that injunctive relief is now appropriate. And the main case we cited, I do want to address this, was a Rule 23 decision, and we are fully aware that that is not precedent. However, the case facts are nearly identical to this case, and its persuasive value is undeniable. In that case, a defendant obtained permission from a past neighbor to build a garage, which would slightly overhang the property line. He did so at great expense to himself. The neighbor sold the property to the plaintiff. The property then existed for several years until there was a falling out, and at the time of the falling out, plaintiff brought suit. Now, what the court found there was that, first of all, the encroachment was unintentional because it was done with permission. And then the appellate court, First District, refused the injunction as there was a great many hours and time and money put into building the garage, and to tear it down would be extremely expensive. Also in that case, the plaintiff had originally remedies at law but allowed them to be barred by the running of the statute of limitations. This case is nearly identical, and I would argue that this is the same logic that we should be following with the facts present here. I do want to just briefly touch on arguments I anticipate from opposing counsel, namely that they will argue the correct standard for injunctive relief here is as follows, that equity will restrain the exercise of legal right to revoke a license when the conduct of the licensor has been such that an insertion of the legal title will operate as a fraud upon the licensee. Well, here, Your Honors, I do not believe we have a license. Even if there was a license between the two original owners, licenses do not run with the land. Therefore, at the time of the sale of the property, the license would have been terminated at that point. Therefore, I don't believe we have a license, and I don't believe that that is the appropriate standard to be applying here for injunctive relief. Thus, Your Honors, we would ask that the court find that the trial court was in error in granting the plaintiff's motion for reconsideration and entering summary judgment, therefore, and reverse that judgment, as well as find that the trial court was in error in denying the defendant's motion for summary judgment and motion for reconsideration, and that that also be reversed. Thank you, Your Honors. Do you have any questions? Quick question of fact. Sure. When your clients purchased the property in 2001, did they share the party wall with a party to the original 1982 agreement? They would have, Your Honor. For one year? Yes. Thank you very much. Mr. Cassidy, for reply. Thank you, Your Honor. This is the court counsel. My name is Tim Cassidy. I represent the plaintiff below in the Appalachian CRE. The question in this case is what was the legal effect of the oral agreement between the respective parties' predecessors and interests that caused this roof and guttering system to originally be constructed over the party wall overhanging my client's roof line. That is the issue. What the deed was under which my client took title cannot create a property interest in the appellant. The appellant was not a party to that deed. The appellant had no privity of interest to that deed, had no chain of title with respect to that property, and is a stranger to that transaction. But the deed says from the grantor, who was my client's predecessor in title, Mr. Hill, under the facts was that my client was taking property subject to conditions, reservations, easements of parent or record. That's to protect the grantor. That does not create a legal interest in a stranger to that agreement. The appropriate legal analysis is, well, let me back up. You can't have my client couldn't take the property subject to an apparent easement unless there was an easement that existed legally in the first instance. So you need to analyze the oral agreement that was made between our respective predecessors, Mr. Hill, my client, Mr. Stewart, the appellant's predecessor. Mr. Stewart, the appellant's predecessor, went to Mr. Hill and said, can I have permission to build a guttering system over the party wall? He said, yes. It was an oral agreement. He was given permission to build the roof and guttering system over the party wall, which overhangs my client's roof line as well. What does that legally create? And that was what the trial court focused on. Did that create a permanent easement as urged and argued by the appellant, or did it create an oral license that's revocable under certain circumstances? And clearly, we cited the Miller case in our briefs, which is an Illinois Supreme Court case, that says an oral agreement such as this can only create a revocable license because an easement given the statute of frauds can only be granted in writing. The statute of fraud, of course, provides that a party cannot charge another party with respect to an interest in land unless it's in writing, and this is what the Miller case says and reaffirms and relies on the statute of frauds. It is a well-settled law that an easement can only be created under two circumstances, by a grant in writing, which doesn't exist in this case. There's no factual dispute that this was an oral agreement between the predecessors entitled, or by prescription, and it's stipulated that this isn't a prescriptive easement case. So we believe that the trial court correctly found that this was an easement that, or rather a license, the existence of this roof and guttering system over my client's legal interest in the party will and his roof line is a license that is revocable. It can't be an easement. It wasn't created in writing. So the argument becomes, well, the deed is the writing that creates this easement because my client took the property subject to apparent easements. But again, that begs the question. This was an apparent license at best. It wasn't an apparent easement. The easement has to be created prior to the deed being issued and accepted by my client. And I think this case is clearly decided on this point by the Supreme Court's decision. In Miller, I'm not going to go through the facts of that case, but they're very similar. It involves a common driveway as opposed to the situation here. It was a common driveway encroached on each party's property, five foot each. And when the predecessors, and they were both predecessors and titles to the party in Miller, they said our intent is this driveway will be here for as long as these houses exist. And subsequently there were new owners. There became a dispute. One of the owners says get off this driveway, put up bricks and saw horses to block the driveway. And that resulted in litigation. The Supreme Court eventually ruled this is not an easement. This was an oral agreement between your predecessors and title. It's revocable. You can only create the easement by a grant in writing. Remarkably similar to this case. So the question becomes what's the remedy? Are we entitled to injunctive relief, which the trial court allowed? Counsel says that the trial court never considered the issue, and that's clearly wrong. If the issue of whether injunctive relief was appropriate was fully briefed, and the trial court decided that it was. And the reason is stated by counsel, as he anticipated my argument, is that they're using the wrong standard in determining whether equitable relief is available in this case. They do a balancing of the equities. What's the cost to the person asked to remove the structure versus the benefit to the party asking that it be removed? And that's the balancing of the equities. And they rely on, and even argued to this court, an unpublished Rule 23 opinion, which I moved to strike that portion of the brief, which was denied. But I don't think the court should consider Rachel, the Rachel case. I didn't brief it because I didn't want to violate Rule 23. And I don't think it should be considered by the court. The other case- Unpublished cases. And injunctive relief is an extraordinary remedy. If they're damaging something else that is available, and there's a great hardship, which is clear here, removing the roof would be a great hardship, then it's more appropriate if damages can suffice to grant damages. Your Honor, if I could address that. That is correct in encroachment cases, when there is an encroachment or an original trespass without permission, whether the encroachment occurred intentionally or unintentionally because there was a mistake in the boundary line. The case that appellants rely on that was a published opinion was an encroachment case and not a license case. The standard for a license in determining whether injunctive relief, with all due respect, is available, is if there's originally permissive use, which there is in this case, which is what a license is, the license is revocable. And what the courts have held is that a court would- operates as a fraud on the licensee, and there's four elements to that. And we cited this, if you're willing, it's Premix v. Verizon in our brief. The standards to determine whether a court should bar a licensor from revoking the license because it would operate as a fraud on the licensee is, one, the licensee spent substantial sums induced by the licensor. There was no inducement here by my client's predecessor to do this. He simply was asked and gave permission to have this structure built. Two, the improvement made by the licensee was partly for the benefit of the licensor. There's no benefit to the licensor in this case with respect to the adjoining property owner's roof and guttering system. Three, the position of the licensee is so changed at the request of the licensor that the licensor cannot be restored to his original position. Here there's been no request by the licensor whatsoever that caused the change of position of either the appellant or its predecessor. And finally, the final element is having been so induced by the licensor to do an act would be a fraud to permit revocation. And again, the licensor in this case, my client's predecessor in title, didn't induce them to do anything. He simply gave permission and there was nothing for the benefit of the licensor. Your Honor is correct, or can respectfully, that in the balancing of the equities, that those are encroachment cases where the encroachment occurred without permission. When a license is created by permission, the licensee is taking the property subject to what a license is. And that is they know it can be revoked and it only can't be revoked if it operates as a fraud. It hasn't even been claimed in this case that revocation operates as a fraud. And I'll stop there. So you're saying that basically upon the revocation of the license that the only remedy then is for the injunctive relief. There could be damage as well, but equitable relief is available. So we have a right to revoke and the courts will enforce the revocation by injunction. If this is the previous case, Verizon Wire put a cable across a party's property under an oral agreement, a license, a permitted use under a license. Several years later, the owner says get the cable off the property. Clearly a substantial expense is involved there. He says get the property off. Verizon says no, we have an easement. The court said no, this was an oral agreement. It was a license. It's just permission to do an act on someone else's property. It's revocable and we will bar revocation only if it operates as a fraud on the licensee. And in that case, as in here, the licensee, Verizon never claimed it was a fraud because they couldn't. Because they were put there by original. Was it a buried cable? I read the case this morning and I don't recall that it said one way or the other. If it was a buried cable, then the other party wouldn't see it when they purchased the property. So I see that as a factual distinction. In this case, your client saw the overlap at the time the property was purchased. So I just think it's a little distinguishable. But I'll look at the case and see if it was above ground or under ground. But I would say, again, your Honor, as to that point, what did my client see? What was the legal – legally, why was that there? I tried to envision this. Is it that one reply is dumping into the other party's gutter? Is that what's happening? No, it's – the record, the factual record is slighted because one of the parties is dead, is deceased. And we got all the evidence we're ever going to get. So it had to be decided on cross-motion for summary judgment. So I think both parties took that position. But what it is, it's kind of a sloped roof. And it comes down over the party wall. It covers the entire party wall. Then the gutter overhangs that as well. And it channels off the back of the property. So – So is it like the Air Knights case where the gutter is covering over the roof of your clients? It's covering over – we have a one-half entrance to the party wall. It covers that completely and then it partially overhangs my client's roof. But it's not touching your client's roof line. It's not touching the roof line. It's touching the party wall. It is touching our half of the party wall. But we have no access to the half of the party wall. So the overhang isn't causing any damage? No. I would concede that. It's not causing damage. It prevents us from using our half of the party wall, which is what a party wall is. Well, you're using it for the purpose it was used for at the time your client bought the property. And that is just a shared wall between – is it single family dwellings? It's commercial. Okay. So it's a shared wall. And now your client wants to change the purpose of their building. They want to go up. But that seems different to me that they came to this property knowing that part of the party wall was blocked. And now they want to change the use. That's what's also troubling me a little bit here. Well, Your Honor, that's what a license is. It doesn't create an interest in the party who has the permission to use someone else's property. It doesn't create an estate or interest in that. I understand. One is an easement and the other is a license. I understand why you're troubled. But from a legal perspective, I think it has to be determined. What is this legal – what did that oil agreement create? Did it create an easement that gives them a permanent interest or estate in my client's property? Or was a license which is revoked? What's the case law on a party wall? Is it owned equally or is it split down the middle like a highway? Well, there was a party wall. The case law is it's you're attached, you're undivided, one half. And there's also a party wall agreement, which is in the record. It was attached to our complaint. There is a party wall agreement that says I maintain the same thing that my client is entitled to. I'm paraphrasing. To use the party wall, his undivided, his half of the party wall for support or whatever he wants to use it for. He has a – But he can't use just half of the party wall to build up. He needs the whole party wall for structure, I believe. He may or may not. That was never really litigated. That part was never litigated. But for the purposes of why we're here, I maintain that it doesn't matter. I understand. Okay. Thank you. Any other questions? So thank you, Mr. Cassidy. Mr. Van Riegen for a rebuttal. Your Honors, at this point I would just like to point out that with a deed you're only conveyed what rights the deed gives up. And the 2002 deed for the JCRE property did have this restriction upon it as far as conditions, restrictions, reservations, and two easements apparent were of record. So I want to point out two things there. Conditions was mentioned to me. The roof is a condition. So, again, I believe even if all this easement talk aside as to what the legal ramifications or types of easements there are, then this roof is a condition, and it's included as well in that section. Further, it does say easements apparent. So we do have to give some type of weight to the language used in the deed. And though an apparent easement might not be a legal thing that we're aware of, it might be prescriptive easements or written easements. Well, it says apparent or of record. So it doesn't seem to limit it to a recorded easement. Exactly, Your Honor. And thank you for helping me get to my point because that's exactly where I wanted to go. Sometimes when I take that line, it doesn't go as far. Thank you. And, Your Honor, that's essentially all I want to point out. If you have any other questions for me, I'm happy to field them at this time. Do you feel there's a distinction? It comes with them because the original agreement was not put in writing that it can't form the basis of an easement. And I thought you earlier said that it may have started as a license, but when there was a deed transfer, that is a critical point, and at that point it became an easement. Is that your contention? Kind of, Your Honor. So I believe that we, as the defense, think there's being a little too much emphasis put on the word easement. To us, it may have started as a license. However, when you accepted this language, that includes that the property is subject to conditions. The roof is a condition. I think you've accepted the roof as a condition. Or then an easement's a parent or a record. I think when you look at that language together, that JCRE accepted the building as it was and as they intended to at that time, how it was, and accepted those conditions. Any other questions? Thank you, Your Honors. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And with that, we will take a brief recess.